## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

LATASHA A. CARR-CUMMINGS,      )
                               )
          Plaintiff,           )
                               )
v.                             )     Case No. CIV-10-189-FHS
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social         )
Security Administration,       )
                               )
          Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Latasha A. Carr-Cummings (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 16, 1980 and was 28 years old at the time of the ALJ's decision. Claimant completed her education through the eleventh grade. Claimant has worked in the past as a waitress, housekeeper, nurse assistant, delivery driver, and

3

counter sales person.   Claimant alleges an inability to work
beginning March 31, 2004 due to limitations resulting from a right
elbow injury.

## Procedural History

On November 28, 2005, Claimant protectively filed for
disability insurance benefits under Title II (42 U.S.C. § 401, *et
seq.*) and supplemental security income pursuant to Title XVI (42
U.S.C. § 1381, *et seq.*) of the Social Security Act.   Claimant's
applications were denied initially and upon reconsideration.   On
February 4, 2008, an administrative hearing was held before ALJ
Lantz McClain in Tulsa, Oklahoma.   On April 24, 2008, the ALJ
issued an unfavorable decision on Claimant's application.   On
February 3, 2010, the Appeals Council denied review of the ALJ's
decision.   As a result, the decision of the ALJ represents the
Commissioner's final decision for purposes of further appeal.   20
C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential
evaluation.  He determined that while Claimant suffered from severe
impairments, she did not meet a listing and retained the residual
functional capacity ("RFC") to perform a full range of light work
with some limitations.

4

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to properly evaluate the opinion of Claimant's treating physician; (2) failing to engage in a proper credibility analysis; and (3) failed to consider all of Claimant's impairments.

## Treating Physician's Opinion

Claimant contends the ALJ failed to properly evaluate the opinion of Dr. Perry Inhofe, Claimant's treating orthopedic surgeon. On February 15, 2000, Claimant sought treatment for a fractured radial head in her right elbow. (Tr. 429). She was placed in a hinged elbow brace and the injury was allowed to heal. (Tr. 429-32).

On June 4, 2003, Claimant again reported falling on the same right arm. Claimant was diagnosed with an intercondylar elbow fracture. (Tr. 362-63). Claimant underwent an open reduction with internal fixation in her right elbow. (Tr. 370-71). Claimant experienced pain in her shoulder, neck, and wrist. (Tr. 445).

On August 19, 2004, Claimant was attended by Dr. Inhofe. He diagnosed Claimant with ulnar neuropathy, right elbow, and cubital tunnel syndrome from impingement of hardware from the previous fixation of the elbow fracture. Dr. Inhofe performed a decompression of the ulnar nerve in the right elbow with anterior

5

transposition, lengthening of the flexor pronator tendons in the right elbow, and arthrotomy of the lateral elbow with extraction of the impinging screw from the fixation hardware.   (Tr. 209).

On December 15, 2004, Dr. Inhofe noted that formal therapy was no longer helpful for Claimant and should be discontinued.   In the long run, Dr. Inhofe informed Claimant that she would continue to have limited motion and strength on a permanent basis.   He opined that Claimant should not return to her prior work but would be an excellent candidate for vocational rehabilitation.   Dr. Inhofe did find Claimant should have permanent restrictions of no lifting of more than 10 pounds with the right upper extremity and no repetitive use of the extremity.   He found Claimant at maximum medical improvement.   (Tr. 196).

Claimant was evaluated by Dr. Richard A. Hastings, II on December 27, 2004.   Dr. Hastings found Claimant range of motion in the right elbow of flexion to 55 degrees.   He noted pain medial and lateral to the forearm with weakness in the tricep and bicep. Range of motion for the right shoulder was found to be 150 degrees flexion, 20 degrees extension, 140 degrees abduction, 20 degrees abduction, 40 degrees internal rotation, and 40 degrees external rotation.   (Tr. 240-42).   Claimant also reported pain over her right hand and wrist.   (Tr. 243).

6

On April 15, 2006, Claimant was evaluated by Dr. Beth Teegarden. Dr. Teegarden assessed Claimant with chronic right shoulder and elbow pain with decreased range of motion and a permanent lifting restriction of less than five pounds in a right-handed individual. Dr. Teegarden noted Claimant's stated difficulty with activities of daily living. (Tr. 25-57).

On May 10, 2006, Dr. Luther Woodcock completed a Physical Residual Functional Capacity Assessment form on Claimant. Dr. Woodcock found Claimant was restricted to occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking for about 6 hours in an 8 hour workday, sitting about 6 hours in an 8 hour workday, and limited pushing and pulling with her right upper extremity. Dr. Woodcock found decreased range of motion in Claimant's right shoulder and right elbow. Her right hand grip strength was 3 to 4 out of 5. (Tr. 263-64). Dr. Woodcock placed restrictions on Claimant's use of her right hand in the areas of reaching in all directions (including overhead) and handling (gross manipulations). He found Claimant was not able to grasp a tool with her right hand, but that she is capable of manipulating small objects with her right hand. She is also limited to no repetitive use of her right hand. (Tr. 265).

7

On January 20, 2007, Dr. Ross Sciara completed a Physical Residual Functional Capacity Assessment form on Claimant. Dr. Sciara found the same exertional limitations as Dr. Woodcock but also included a limitation that Claimant could not use her right arm to push or pull more than five pounds. (Tr. 271). Dr. Sciara also found Claimant could only occasionally climb ladders, rope or scaffolds and occasionally crawl. (Tr. 272). Dr. Sciara also found manipulative limitations on Claimant for reaching in all directions (including overhead), handling (gross manipulation), and fingering (fine manipulation). (Tr. 273). Dr. Sciara concluded that physical therapy after surgery had failed to restore her right elbow to normal use. He noted the five pound weight restriction to her right hand. Dr. Sciara noted Claimant has reduced use of her right shoulder and loss of range of motion of 25 degrees in abduction indicating possible rotator cuff injury. Claimant told Dr. Sciara she has difficulties with all activities involving her right hand and shoulder since she is right handed. She is able to shop, drive a car, do paper work and generally do most functions though at a reduced level. (Tr. 277).

In his decision, the ALJ determined Claimant suffered from the severe impairments of status post injury to the right elbow and right shoulder strain. (Tr. 14). Based upon these findings, the

8

ALJ found Claimant retained the RFC to lift and/or carry 20 pounds occasionally or 10 pounds frequently, stand and/or walk for at least 6 hours in an 8 hour workday with normal breaks, and sit for at least 6 hours in an 8 hour workday with normal breaks.  The ALJ also included the restriction that Claimant, being right hand dominant, lift no more than five pounds with her right hand or arm and engage in no repetitive twisting motion with the right hand. (Tr. 15).

With regard to the opinion of Dr. Inhofe, the ALJ recited his medical treatment of Claimant from June 2, 2003 through December 15, 2004.  He also noted Dr. Inhofe's restriction at the time of no use of the right upper extremity.   (Tr. 17).   The ALJ did not specifically address the explicit permanent restriction imposed by Dr. Inhofe of "no lifting of more than 10 pounds with the right upper extremity and no repetitive use of the extremity."  Instead, when the ALJ established Claimant's RFC, he found Claimant would be limited to 5 pounds with her right hand or arm "and no repetitive twisting motion with the right hand."   (Tr. 15).    While close, these restrictions are not completely congruent in the area of repetitive use.  Dr. Inhofe did not limit the repetitive use to a twisting motion.

The ALJ is required to support his RFC with substantial

9

evidence.  <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1261 (10th Cir. 2005).  Moreover, Dr. Inhofe is clearly Claimant's treating physician.  The ALJ is required to give a treating physician's opinion controlling weight, unless circumstances justify giving it a lesser weight.  In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."  <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  <u>Id</u>. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  <u>Id</u>.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  <u>Id</u>. (quotation omitted).  The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

10

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.   Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion.   20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted).   Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id.   "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so."   Watkins, 350 F.3d at 1301 (quotations omitted).

In this case, the ALJ did not specifically reference Dr. Inhofe's opinion on Claimant's restrictions nor did he include the restriction in his RFC determination.   On remand, the ALJ shall recognize Dr. Inhofe's specific restrictions and state the weight it is given in arriving at Claimant's RFC.

Despite stating that the specific first error was limited to

the failure of the ALJ to properly consider the opinion of a treating physician, Claimant includes a myriad of other issues in this portion of his briefing not related to Dr. Inhofe's opinion. Among the issues raised is the duty of the ALJ to recontact - which has little bearing on the consideration of Dr. Inhofe's opinion. Further, Claimant contends the ALJ ignored Dr. Hastings' opinions, a non-treating physician.  The ALJ shall consider the totality of the restrictions found by Dr. Hastings and explain the weight afforded to them.  Claimant also states that non-treating, non-examining reviewers formulated two separate RFC assessments which were significantly different and that the ALJ failed to explain fully his basis for providing some weight to these opinions.  The ALJ should reconcile all of the medical opinions provided and the restrictions established by each, affording the treating physician's opinions the paramount weight, unless the opinion is found not to be supported.

This Court would note for reference by the ALJ that the fact some of the physicians utilized the term "disabled" should be of less concern than the nature of the particular restrictions found by those physicians.  The ALJ finds a basis for rejecting some opinion evidence based upon his concern that the physician might not know the meaning of the term "disability" as employed in Social

Security law.   This concern is truly of little moment to the objective of arriving at a supported RFC.   On remand, the ALJ should be less concerned with labels as a basis for rejection and focus more on the specific medical findings.

### Credibility Analysis

The ALJ offers little in the way of references to the medical record to support his rejection of Claimant's credibility on limitations.   It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.   Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures

other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391.  However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence."  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ shall re-evaluate his findings on credibility based upon his conclusions concerning Claimant's condition on the date of last insured.

### Consideration of All Impairments

Claimant also contends the ALJ should have considered her mental limitations as severe.  In this regard, the medical record includes mental health treatment records from Shadow Mountain Hospital from 1996 indicating Claimant was treated for Major Depression, recurrent, Oppositional Defiant Disorder, and PTSD, chronic.  At that time, Claimant had a GAF of 70.  (Tr. 448-49).

14

No other records indicate mental impairments or evaluations for mental impairments. Claimant did not report mental limitations in her filings. (Tr. 120-21). Claimant testified at the administrative hearing that she suffers from depression which is exacerbated by the pain caused from her injuries. (Tr. 41-42).

The ALJ recognized the history of psychiatric problems but found only a minimal limitation on Claimant's ability to perform basic work activities. (Tr. 14). The ALJ further found under the "B" criteria of the listings that Claimant's "remote history of psychiatric problems does not impose more than a moderate degree of limitation on the claimant's activities . . . ." (Tr. 15). This Court finds no error in the failure of the ALJ to include mental limitations in his RFC determination.

As a final matter, Claimant requests that a direct award of benefits be ordered. This Court denies this request as the ALJ should be provided an opportunity to re-evaluate his decision in light of this Court's ruling.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social

15

Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

    DATED this ____ day of September, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

16